SO ORDERED.

SIGNED this 16th day of June, 2014.





Robert E. Nugent
United States Chief Bankruptcy Judge

ORDER DESIGNATED FOR ONLINE PUBLICATION ONLY

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| MARY DONNA POLLAN, | ) | Case No. 13-12513 |
| | ) | Chapter 13 |
| Debtor. | ) | |
| | ) | |
| SHERI NIELSEN | ) | |
| JACKIE NIELSEN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | Adv. No. 13-5204 |
| | ) | |
| MARY DONNA POLLAN, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART
<u>DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS</u>**

1

Mary Pollan offered to help Sheri Nielsen acquire a more reliable car by purchasing a Kia Soul in her name and signing the purchase money loan as the sole borrower so that Sheri could take advantage of the lower interest rate offered by the dealer. Both the car and the loan would be in Mary's name, but Sheri would make the payments and once the loan was repaid and the lien released, Mary would transfer the vehicle's title to Sheri. As long as Sheri made the payments, she would enjoy the exclusive use of the vehicle.[1] But, according to Sheri, after Mary convinced Sheri's mother, Jackie, to refinance the car loan at the bank Jackie used, Mary refused to transfer the certificate of title to Sheri so the new bank could perfect its lien. Instead, Mary got a duplicate key, took the car, sold it, and kept the money.

Sheri's and Jackie's complaint states an exception to discharge claim based on common law fraud under 11 U.S.C. § 523(a)(2)(A). They successfully pled that Mary schemed to get Sheri and Jackie to pay for a car that she intended to keep. Jackie successfully pled a companion fraud claim that Mary tricked her into paying off Mary's purchase money loan. But, while Mary's refusal to assign the certificate of title to Sheri is a part of her alleged scheme, that refusal is not sufficient by itself to support a fraud exception to her discharge that is based solely on KAN. STAT. ANN. § 8-135(c)(7) (2013 Supp.). To that extent, Sheri and Jackie's complaint fails to state a

---

[1] All of these agreements were oral.

2

claim under Fed. R. Bankr. P. 7012 and Fed. R. Civ. P. 12(b)(6). The balance of Mary's motion is denied.[2]

### *Jurisdiction*

An action to determine the dischargeability of a debt is a core proceeding over which the bankruptcy court has subject matter jurisdiction and may enter a final order and judgment.[3]

### *Rule 12(b)(6) Standards—Failure to State a Claim*

For the Nielsens' complaint to survive Mary Pollan's motion to dismiss, the facts they pled must be sufficient to state a claim for relief excepting from Pollan's discharge a debt incurred by fraud under § 523(a)(2)(A) and § 1328(a)(2). I review the sufficiency of the complaint to do that, not whether plaintiffs will ultimately prevail on the claims they alleged.[4] Plaintiffs must have alleged enough facts to support a claim that is plausible on its face.[5] The plausibility standard is less than a probability but more than a sheer possibility that plaintiffs are entitled to the relief requested.[6]

---

[2] The Nielsens appear by their attorney Barry Arbuckle. Mary Pollan appears by her attorney Carl B. Davis.
[3] 28 U.S.C. § 157(b)(1) and (b)(2)(I) and § 1334.
[4] *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008) (In ruling on a motion to dismiss the judge must accept all allegations as true and may not dismiss on the basis that it appears unlikely the allegations can be proven.).
[5] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007) (enough facts must be alleged to nudge the claim across the line from conceivable to plausible).
[6] *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

3

For purposes of this motion, we take the facts pled in the complaint as true.[7]

*Facts*

In their complaint, Sheri and Jackie Nielsen allege that in the spring of 2011, Mary Pollan agreed to help Sheri acquire a more reliable used car.[8] They visited a dealer and were told that, as a lone buyer and borrower, Mary could qualify for a lower interest rate than Mary and Sheri would be charged if they purchased and financed the car together. Mary and Sheri agreed to Mary's "straw purchase" of the car. Sheri selected a 2010 Kia. Mary advanced the $2,000 down payment and signed the secured car loan in her name only.[9] The car dealer assigned the loan to T.D. Auto Finance. According to the complaint, Mary and Sheri agreed that Sheri would have exclusive use of the car so long as she made payments to Mary to repay the down payment as well as making the monthly car loan payments to T.D. Auto. When both obligations were paid in full, Mary would assign the certificate of title to Sheri.

Sheri took delivery of the Soul in July of 2011 and began making monthly loan

---

[7] *Ridge at Red Hawk, L.L.C. v. Schneider,* 493 F.3d 1174, 1177 (10th Cir. 2007) (In reviewing the sufficiency of the complaint, the court assumes the truth of the plaintiff's well-pleaded factual allegations and views them in the light most favorable to the plaintiff.); *Mobley v. McCormick,* 40 F.3d 337, 340 (10th Cir. 1994) (A Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after accepting as true all well-pleaded factual allegations.).
[8] The nature of the relationship between Sheri Nielsen and Mary Pollan is not described in the complaint.
[9] None of the car sale, title, or loan documents specifying the details of the transaction are attached to the complaint.

4

payments to Mary and T.D. Auto. Sometime in 2012, Sheri repaid the $2,000 down payment. In early 2012, Sheri became delinquent on the loan payments to T.D. Auto and voluntarily surrendered the car to Mary for one day, apparently to prevent its being repossessed. Mary returned the car after Sheri cured the arrearage. After this, Mary began to urge Sheri to refinance the car loan in her own name immediately rather than continue with the monthly payments for the remainder of the four year term. Sheri could not assume the T.D. Auto loan.

In the spring of 2012, Mary approached Sheri's mother, Jackie Nielsen, and asked to help refinance the loan in Sheri's name so that Mary's liability could be eliminated. Jackie had other banking business at Citizens Bank of Kansas. She applied there and, in April, Citizens approved a loan of $18.000 to Sheri and Jackie. That loan closed on April 30 and the Bank sent the $17,709 payoff amount to T.D. Auto. Sheri and/or Jackie began making loan payments to Citizens. On May 29, the Bank received the lien release from T.D. Auto. Then, the Kansas Department of Revenue issued a clean Kansas title in Mary's name. She received it on June 5. Despite repeated requests, Mary refused to assign the title to the Nielsens or to deliver it to the Bank. She claimed that, while Sheri had repaid the down payment loan, she still owed Mary an unrelated debt. One day in September of 2012, Mary dropped the unassigned title off at the Bank and left. When the Bank called her, asking that she return and sign the title over to the Nielsens, she returned to the

5

Bank but refused to sign the title. She took it and left, walking out of the Bank president's office with it. On or about September 28, 2012, the Bank made demand on Mary for assignment of the title or repayment of the $17,709 pay-off that the Bank had funded.

Mary then had the car dealership make a duplicate key to the Kia and on October 2, 2012, took it from Sheri's workplace. She sold Sheri's Soul to Carmax that very day for $8,000 and kept the proceeds for her use. In state court litigation that followed, Mary admitted in discovery that she "never actually intended" for Sheri to be the car's owner, even if Sheri made all of the car payments. Sheri and Jackie stopped paying the bank loan in October of 2012 and Citizens sued. Sheri and Jackie sued Mary in state court. Mary filed this chapter 13 case on September 27, 2013 and obtained confirmation of her chapter 13 plan on January 10, 2014.

*Analysis*

While plaintiffs' complaint does not identify these claims as arising under § 523(a)(2)(A), the fraud exception to discharge, it does request a determination that Mary's debt was incurred by common law and statutory fraud and is therefore excepted from any chapter 13 discharge that Mary might receive under § 1328(a)(2). Section 1328(a)(2) incorporates the § 523(a)(2) discharge exception by reference. A

6

fair reading of the complaint suggests that plaintiffs seek to invoke § 523(a)(2)(A).[10]

This subsection excepts from a debtor's discharge any debt "for money or property obtained" by "false pretenses, a false representation, *or* actual fraud."[11] Some courts, including this Circuit's bankruptcy appellate panel, have held that a false representation is not a necessary element of actual fraud under § 523(a)(2)(A) and that actual fraud supplies a separate basis for excepting a debt from discharge that is independent from false pretenses or false representation.[12] These courts say that Congress's use of the disjunctive "or" in the statute forces the conclusion that the three categories of conduct named in (a)(2)(A) are distinct.[13] Intent to deceive distinguishes actual fraud from constructive or implied fraud[14] and the tortfeasor's intent can be inferred from the factual circumstances.[15] A debtor commits actual fraud when she "intentionally engages in a scheme to deprive or cheat another of

---

[10] The only other discharge exception incorporated by § 1328(a)(2) that could be in play is § 523(a)(4) – fraud while acting in a fiduciary capacity. I conclude that plaintiffs' claims are not asserted under § 523(a)(4) because there is no allegation that Pollan was acting in a fiduciary capacity in her dealings with the plaintiffs nor any allegations that can be construed as creating a technical trust.

[11] § 523(a)(2)(A) (Emphasis added).

[12] *Diamond v. Vickery (In re Vickery),* 488 B.R. 680, 691 (10th Cir. BAP 2013) (agreeing with cases decided by the Seventh Circuit Court of Appeals and the Sixth Circuit Bankruptcy Appellate Panel).

[13] *Id.* at 687; *McClellan v. Cantrell,* 217 F.3d 890, 893 (7th Cir. 2000) (by distinguishing between a false representation and actual fraud, § 523(a)(2)(A) makes clear that actual fraud is broader than misrepresentation).

[14] *Diamond v. Vickery,* 488 B.R. at 690*; McClellan v. Cantrell,* 217 F.3d at 894.

[15] *Bank of Cordell v. Sturgeon (In re Sturgeon),* 496 B.R. 215, 222 (10th Cir. BAP 2013).

7

property or a legal right."[16] The plaintiffs assert that Mary made affirmative misrepresentations to them upon which they relied to induce them to participate in the transaction.[17] Their complaint can also be read to allege that Mary engaged in conduct that fostered a false impression, implicating the presence of false pretenses.[18] Even though the plaintiffs style their claims as fraud, because they allege an exception to discharge that is based on §1328(a)(2), and by reference, § 523(a)(2), we consider whether the complaint states a claim for relief based on any of the three prongs of § 523(a)(2)(A).

### *Plaintiffs have pled common law fraud with sufficient particularity and have stated a claim under § 523(a)(2)(A).*

Mary seeks dismissal of Sheri and Jackie's common law fraud claim because they have not pled the factual circumstances of the alleged fraud with sufficient particularity under Fed. R. Civ. P. 9(b) and that this deficiency warrants dismissal of the claim. She bases this position on the plaintiffs' alleged failure to plead a particular misrepresentation by her. But, as noted above, because actual fraud is a basis for nondischargeability that is distinct from misrepresentation, and because

---

[16] *Diamond v. Vickery,* 488 B.R. at 690, quoting *Mellon Bank, N.A. v. Vitanovich (In re Vitanovich),* 259 B.R. 873, 877 (6th Cir. BAP 2001). *See also McClellan v. Cantrell,* 217 F.3d at 893 (quoting Collier on Bankruptcy, actual fraud means any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another.).

[17] *See* Adv. Dkt. 1, ¶s 4 and 17.

[18] *See In re Sturgeon,* 496 B.R. at 223 (distinguishing a false representation claim and a false pretense claim under the discharge exception).

8

demonstrating actual fraud in this context does not require either a showing of misrepresentation or reliance, the alleged lack of a misrepresentation, even if correct, does not settle the issue. Instead, the test is whether the plaintiffs allege a scheme, deceit, artifice, trick, or design intended to cheat another and whether the facts as alleged are sufficient to state a claim that is plausible on its face. In their complaint, Sheri and Jackie set out a detailed factual statement that, taken as true, plainly supports a plausible claim that Mary schemed to get a car at plaintiffs' expense and that she carried out that scheme. The complaint contains the "who, what, when, where, and how" of the alleged fraudulent scheme and specifically alleges Mary's fraudulent intent at paragraph 5:

> In 2013, in written responses to legal counsel for the plaintiff Sheri Nielsen, *the debtor admitted [that she] never actually intended for Sheri Nielsen to be the auto's* owner . . . but that debtor would always be, and remain the vehicle's owner, even after the vehicle was fully paid for.[19]

The written responses referred to by plaintiffs were supplied in response to discovery in a state court lawsuit.[20] This allegation, taken with the further allegations that

---

[19] Adv. Dkt. 1. Emphasis added. Fraudulent intent may be shown if debtor enters into a contract or makes a promise without intending to comply or perform. *See In re Schmidt,* 70 B.R. 634, 640 (Bankr. N.D. Ind. 1986).

[20] The plaintiffs refer to a lawsuit brought by Citizens Bank against them to collect the loan balance. Adv. Dkt. 1, Complaint, ¶ 28. It is unclear if Pollan is a party to that lawsuit or whether plaintiffs have brought separate suit against Pollan in state court as result of this vehicle transaction. The status of the state court suit(s) is not apparent from the record before this Court.

9

after the car had been paid for, Mary not only refused to assign the certificate of title to Sheri or Jackie, but instead obtained a duplicate key to the vehicle and "surreptitiously removed the auto from Sheri Nielsen's employment," sold it, and kept the proceeds, could allow a court to infer that she intended to defraud the Nielsens. Indeed, the disposal of the vehicle followed shortly after the Bank made demand on Mary for the assigned certificate of title or repayment of the take out loan.

Jackie also sufficiently alleges actual fraud against Mary. Mary approached Jackie to enlist her aid in getting the take-out loan from Citizens, Jackie's bank, to pay off Mary's loan with T.D. Auto. Mary never revealed that she intended to retain the car.[21] Why would Sheri and Jackie have agreed to this cleverly contrived transaction or have borrowed in order to pay for the car if they knew that Mary intended to keep it? Their allegations are detailed, specific, and particular. They state a plausible claim for actual fraud. Therefore, Pollan's motion to dismiss the common law fraud claim should be DENIED.

In addition to actual fraud, the plaintiffs also state a claim for misrepresentation and false pretenses under the other prongs of § 523(a)(2)(A). As alleged in the complaint, Sheri relied on Mary's representation that she [Sheri] would

---

[21] Complaint, ¶s 12-14, 16-18. In paragraph 17, plaintiffs also allege a misrepresentation by Pollan: "In reliance on debtor's representation she wanted to be rid of that loan's liability [T.D. Auto Finance] *and auto,* the plaintiffs' loan [sic] actually closed the Citizens' loan on April 30, 2012 . . ."

10

have exclusive use and ownership of the vehicle by repaying the down payment to Mary and making the monthly loan payments to T.D. Auto.[22] Later, in 2012, the Nielsens allege their reliance on Mary's representation that she wanted to rid herself of liability on the original car loan and the auto, in procuring the take out loan from Citizens Bank and paying off T.D. Auto.[23] Mary's alleged intent to defraud or deceive could be inferred from her statement that she never intended to part with ownership of the vehicle.

Finally, the plaintiffs' allegations also state a claim for false pretenses under § 523(a)(2)(A). False pretenses differ from false representations in that the former are implied misrepresentations, conduct, or omissions intended to create and foster a false impression.[24] Here, if not explicitly misrepresented, Mary's alleged conduct and statements created the false impression that Sheri would become the title owner of the Kia upon repayment of Mary's car loan. Mary never disclosed her secret intent to retain ownership of the vehicle at any point in the transaction or their dealings, including when she solicited the Nielsens to pay off her loan early. The Nielsens clearly were led to believe the car would be theirs. The plaintiffs' complaint supports a claim for false pretenses and misrepresentation under § 523(a)(2)(A). Pollan's

---

[22] Complaint, ¶ 4.
[23] Complaint, ¶ 17.
[24] *Bank of Cordell v. Sturgeon (In re Sturgeon),* 496 B.R. 215, 223 (10th Cir. BAP 2013).

11

motion to dismiss for failure to state a claim should be DENIED on this additional basis.

### *Violation of KAN. STAT. ANN. § 8-135(c)(7) does not constitute actual fraud*.

Sheri and Jackie's complaint appears to allege a claim that Mary's failure to transfer and assign a certificate of title to the Kia is a separate act of fraud that would support an exception from discharge under §523(a)(2)(A). They base that part of their claim on KAN. STAT. ANN. § 8-135(c)(7), a provision in the Kansas vehicle code that provides:

> *It shall be unlawful for any person to buy or sell in this state any vehicle required to be registered, unless*, at the time of delivery thereof or at a time agreed upon by the parties, *not to exceed 60 days . . . after the time of delivery, there shall pass between the parties a certificate of title with an assignment thereof.* The sale of a vehicle required to be registered under the laws of this state, *without assignment of the certificate of title, is fraudulent and void*, unless the parties shall agree that the certificate of title with assignment thereof shall pass between them at a time other than the time of delivery, but within 60 days thereof.[25]

The plaintiffs contend that Mary's failure to assign the title to Sheri after her lender financed the payoff of Pollan's loan in late April-early May of 2012 is, by itself, a sufficient basis to find that Mary committed actual fraud.[26] This resulted in Mary

---

[25] KAN. STAT. ANN. § 8-135(c)(7) (2013 Supp.), emphasis added.
[26] Without the certificate of title, the lender was prevented from perfecting a security interest in the vehicle by noting its lien on the certificate of title and could not secure its loan to Sheri and her mother. Because she never received a properly assigned title, Sheri

12

remaining the owner of record when she took the Kia back from Sheri five months later and sold it. Even assuming that the statute applies to the transaction between Mary and the Nielsens, that alone is not enough to support a plausible claim for relief under the actual fraud prong of § 523(a)(2)(A).

The Kansas statute voids a sale as "fraudulent" when the title isn't assigned, but nothing in it requires a showing that the seller actually intended to defraud the buyer. If there is any common law fraud involved, it is likely to be constructive fraud at worst, fraud that requires neither intent nor moral guilt, but can instead be shown to have occurred as a result of the tortfeasor's legal duty.[27] A violation of § 8-135(c)(7) is a constructive or implied fraud, but, standing alone, it is not actual fraud[28] and does not support excepting a debt from discharge under the actual fraud prong of §523(a)(2)(A).[29] While Mary's alleged refusal to assign and transfer the certificate of

---

did not become the owner of the vehicle even though she paid for it.

[27] Constructive fraud is a breach of a legal duty which, irrespective of moral guilt, the law declares fraudulent; neither actual dishonesty of purpose or intent to deceive is necessary. Actual fraud, on the other hand, is an intentional fraud and the intent to deceive is an essential element thereof. *Andres v. Claassen,* 238 Kan. 732, 741-42, 714 P.2d 963 (1986).

[28] Actual fraud requires proof that (1) a fraud occurred, (2) debtor intended to defraud, and (3) the fraud gave rise to the debt that is the subject of the discharge dispute. *In re Philopulos,* 313 B.R. 271 (Bankr. N.D. Ill. 2004).

[29] *See In re Hanson,* 432 B.R. 758, 772 (Bankr. N.D. Ill. 2010) (Fraud exception under § 523(a)(2)(A) does not reach constructive frauds); *In re Alvarez,* 13 B.R. 571, 574 (Bankr. S.D. Fla. 1981) (commission of statutory fraud [sale of unregistered securities by an unregistered dealer] does not, of itself, constitute actual fraud for purposes of nondischargeability under § 523(a)(2)(A)); *In re Parker,* 264 B.R. 685, 699 (10th Cir. BAP 2001), *aff'd* 313 F.3d 1267 (10th Cir. 2002) (the fraud discharge exception of § 523(a)(2)(A) means actual or positive fraud, rather than fraud implied by law; it includes those frauds involving moral turpitude or intentional wrong.); *In re Johnson,* 477 B.R. 156, 169 (10th Cir.

13

title may be more factual support for the Nielsens' common law fraud claim, it does not stand alone as a claim upon which relief may be granted here. To that extent, Pollan's motion to dismiss the "statutory fraud" claim based solely on KAN. STAT. ANN. § 8-135(c)(7) should be GRANTED.

With the denial of Mary's motion to dismiss the common law fraud exception to discharge pled by these plaintiffs, she is granted 14 days from the date of the entry of this Order to serve and file her answer to the plaintiffs' complaint. A scheduling conference in this proceeding will be scheduled shortly thereafter.

# # #

---

BAP 2012) (Fraud implied in law that may arise in the absence of bad faith or immorality is insufficient for § 523(a)(2)(A).).

14